We'll hear the first case, Manhattan Beer. May it please the court, my name is Alan Roberts. I represent Manhattan Beer Distributors, the petitioner cross-respondent in this case. At its core, this case is about what happened on June 8, 2013, when a Manhattan Beer employee, Joe Garcia Diaz, reported for work reeking from the smell of marijuana and with bloodshot and glassy eyes, in violation of Manhattan Beer's policy and its collective bargaining agreement with the union representing Mr. Diaz. Two separate legal points flow from those undisputed facts. First, the so-called Weingarten Rights for representation when it is requested at an investigatory interview that could lead to discipline do not apply to the drug test that Manhattan Beer routinely offered to Diaz as an opportunity for him to show that the reasonable suspicion of the managers who observed him was wrong. The second legal point that flows from this is that by statute, the National Labor Relations Board has no authority to order the reinstatement and back pay when the discharge of an employee is for cause. Now, just so, if I can just back up for just a moment, in your brief, as I understand it, you say you concede that an employee has a right to representation before agreeing to a drug test. Yes, that is stated in the board's case law and particularly System 99. So is your only response to the board's conclusion that Diaz's right in that respect was violated, is that the phone conversation satisfies that right to representation? Is that your view? It's not only our view, Your Honor, but it is the view of this record and what Mr. Diaz requested. Weingarten is not automatically triggered. Weingarten rights are triggered by an employee anticipating an investigatory interview that could lead to his or her discipline, saying I want representation in this investigatory interview that has a confrontational aspect, an interactive aspect. So what we have with Mr. Diaz is several completed acts. He appeared at Manhattan Beer, reeking from marijuana, with bloodshot and glassy eyes, and that was observed. There was discussion between Mr. Diaz and two managers of the facility. One of them said that he thought Mr. Diaz smelled funny. And Mr. Diaz, at that point, and this is from his affidavit during the NLRB's investigation, he knew then that the Manhattan Beer manager must be talking about marijuana and the way it smelled on him. That was Diaz's testimony. Through all of that time, there is no occasion for a Weingarten right because Mr. Wetherill suggests that Diaz would drive himself to the drug testing center and they would finish talking there. I mean, they were having an interchange that could potentially lead to discipline were Mr. Diaz to make a concession of the reason for his appearance. Isn't that right? The record shows that, Your Honor. But there is no indication about what the substance of the discussion would be, whether there would be any questions. The record was never developed in that respect. But the point is there was a verbal interchange that is unlike just being directed to go to a particular center and pee in a cup. Well, except for the fact that the reasonable suspicion already was established before that occasion. And the test that was offered to Mr. Diaz was an opportunity that Manhattan Beer always extends to its employees who are going to be drug tested. They could have fired him without the test, right? They could have fired him without the test, but it was their practice. Why did your people in their reports say that they fired him for not taking the test? It was both of those things, Your Honor. Do you agree with me that this is a substantial evidence question? The substantial evidence all points to the reasonable suspicion being established and the fact that Mr. Diaz was offered the opportunity. And in the record it's called the benefit. Is that a long yes? I take it as a long yes. It is a substantial evidence question? Yes. And cannot the Board reasonably and not arbitrarily look at those reports and make a conclusion that he was fired because he refused the test? Not on the basis of what the Administrative Law Judge decided, Your Honor. Well, the Board can overturn the Administrative Law Judge, which it did, and we then review the Board's determination, don't we? That is correct. I'm not interested in what the Administrative Law Judge did. I'm interested in what the Board did because your petition here seeks to overturn the Board's determination. Okay? So tell me, you're saying to me the substantial evidence does not support a Board conclusion that his termination resulted from his refusal to take the test. Because the Board never carried its so-called right-line burden of establishing that the cause of Mr. Diaz's discharge was his refusal. On this record, unlike the records in cases like Ralph's and Safeway, Manhattan Beer had a reasonable suspicion before there was ever an issue about the drug test being taken. And that's why I asked you if they could have fired him without the test, which you didn't answer, but I presume that they could have. They could have, yes. I'm sorry, just quickly. And that, you would say, is established where? The right to fire an employee on reasonable suspicion alone? It's in the Collective Bargaining Agreement, Section Article 39. And it exists in the practice of Manhattan Beer, where it has fired other people reasonably suspected of drug or alcohol use who did not take a drug or alcohol test. The Collective Bargaining Agreement alone, as I read it, provided that an employee who is impaired by illegal drugs when reporting for work is subject to immediately disciplinary action. But that's different a little bit, I think, from reasonable suspicion. I mean, so the test would have been either confirmatory or exculpatory. What we've been saying here is that there is reasonable suspicion. Yes, because that is one of the scheduled reasons for drug testing. But that isn't in the CBA, is it? Yes, I believe. Is it reasonable suspicion itself? Yes. Okay. Okay, you'll have a few minutes in rebuttal. Thank you. Thank you, Your Honor. Good morning, Your Honors. Michael Aleman, on behalf of the Board, seeking full enforcement of its order. I, of course, want to turn to the Court's questions about whether or not Manhattan Beer could fire Mr. Diaz. Before you do that, I'd like to just ask your help in clarifying when the Weingarten violation occurred. So the Board seems to have held that, in part, that Diaz had a right to have a representative during the administration of the test. Is that correct? I'm not sure about during the administration of the test. What the Board says at the top of page 3 of its DNO is that the Weingarten representative could have been helpful in observing the testing protocol itself. And I think what it means by that is Manhattan Beer, and this was testified to in the record, had a procedure when it was going to send somebody to get an investigatory drug test. That procedure was the manager drove the individual to the drug test with the chain of custody paperwork and several copies of that chain of custody paperwork. The individual was then escorted into the testing location. The manager then waited in the waiting room, gave the chain of custody paperwork to the person who was going to be taking the specimen, waited for it to be taken, and then retrieved the chain of custody paperwork and then brought it back to Manhattan Beer. That's a protocol and procedure that a union representative could have observed. So you're sort of walking back from the view that he was entitled to representation if he had asked for it at the drug test. And you're saying the Weingarten violation occurred initially, right, when he was determining whether to submit to a drug test. That's the initial source of the violation. That's the source of your violation. That's the beginning source. I mean, I think the board does say that he's entitled to a representative while he's deciding. And also a representative could have been helpful at the testing location itself because, again, there's this protocol. So is there a Weingarten violation at, so is there a Weingarten violation when he is at the site? So what the board says is the representative could have been helpful there. Now, if your Honor's question is a hypothetical, that if this was only at the testing location and there's been no questioning, there's no indication that there's going to be further questioning, and all the individual has to do is submit to the drug testing, I think that's a very different case than what we have here. So let me just, if I could, just outline a source of my confusion. Absolutely. So at the beginning, the board states, this is a special appendix 2, where an employer insists that an employee submit to drug and or alcohol tests as part of an investigation into an employee's alleged misconduct, the employee has a right to union representation before consenting to take the test. And that seems to concern representation before consenting to a test. But then later, the board clearly says that Diaz's rights were violated because he was denied the right to have a representative help him monitor the test during the test. Is it one or the other or both? I think it's both, Your Honor. I think he has a right because there's going to always be protocols and procedures for the taking of the specimen and for the lead up to the taking of the specimen. And an individual has the right to their union representative to observe that process. I'm not suggesting they have the right to the union representative observing the actual physical taking of the specimen. But there's going to be protocols and procedures that happened before, during, and after the test that, particularly on this record, management has a representative in the waiting room that's observing those protocols. So it's not too much to ask for the union to also be there as well. That's what Weingarten envisions, a check on management. Why wasn't it enough for Diaz to make his two phone calls, one of which resulted in a conversation with Mr. Gonzalez, advising him about whether to go forward or not? Does the employer have an obligation to wait an indefinite period of time until the union makes someone available? Certainly not an indefinite period of time, Your Honor. How long do they have to wait? Well, what the Board says is a reasonable amount of time is the words that it uses. And I certainly understand the Court's concern that that could become a difficult question. It's not a difficult question on this record. This record was, it was about two hours period of time between when Mr. Diaz showed up to work and when they ordered him and gave him an ultimatum that he must take the test immediately without... you know, wait another hour and we'll get someone over there, right? That was just the end of it and the employer said, you know, we've got to take this test. You are displaying these symptoms now, let's go. So why doesn't, why isn't the real problem here the union's failure to produce somebody for Mr., to be with, accompany Mr. Diaz? Sure, Your Honor, and I think that's a fair point. But I think it's important to first remember that Mr. Gonzalez was the second call because Mr. Gonzalez was the union agent who was on vacation that day. Mary was the individual who was supposed to be at the workplace and that's who the first call was to. Well, I agree, but to me that reflects the union, the employer's openness to having someone present or to have a consultation and no hostility to the exercise of Weingarten rights. Why is that wrong? Because I think the individual still must be given a reasonable opportunity to get the union representative that they're seeking to the location to advise them. Why was this not reasonable? He made two phone calls and had conversations with Mr. Gonzalez. Well, I hasten to say that Mr. Gonzalez gave much advice to Mr. Diaz. I mean, it was really, I'm on vacation. I cannot provide you with a copy of the collective bargaining agreement, which is what you're requesting. And if you don't want to take the test, then you should, you know. The fact that the advice was bad doesn't mean it wasn't advice in the context of a consultation. I, again, have difficulty seeing the employer didn't take the position that you can't have anyone, you can't talk with anyone, we're shipping you off right now. Well, I would respectfully disagree on that point. I mean, recall when he first says I want my union representative here, the response is this is a company issue now. You're not entitled to a union representative. Mr. Diaz then goes out on his own outside and calls his union representative. I don't know if there was much interaction between him and the employer, but I don't see anything in the record where the employer said, oh, yeah, of course, we'll wait for the union representative for a reasonable amount of time. They say you have to take this now. Well, as we've said, though, there is some ambiguity in the law about exactly who needs to be present for what, when. You know, the physical presence at the test, for example, right? Sure, Your Honor, but I think on this record the board is granted substantial deference to look at the facts of this case and determine that a wine garden representative's physical presence at the scene would have greatly aided Mr. Diaz. Now let's go back to the first stage. You've got the precedent of Mahari, which the board doesn't discuss, right? Correct, in their decision, correct. Isn't Mahari in tension with the decision in this case? Well, Your Honor, I'm not sure. I mean, of course, in Mahari the board itself does not discuss the wine garden issue. The ALJ discusses it. But they say they essentially adopted the ALJ's determination. Sure, Your Honor. But I would suggest that the facts of Mahari are a little different. I mean, first of all, the individual in Mahari never suggested that he was actually willing to take the psychological evaluation that he was being ordered to take. Mr. Diaz repeatedly states that he is willing to take the drug test so long as his representation rights are respected. I think that is very different because you have an individual who's willing to comply with management. They just want their statutory rights protected. So I think that's the first difference with Mahari. I think also in Mahari the facts were that the individual did have an opportunity to have witnesses observe him. That is, after the employer orders him to take the evaluation, the individual goes around and asks people, you know, do you agree with management that I'm acting funny today? Do you agree that I needed a medical evaluation? And so that individual has an opportunity to get witnesses to observe him, which is actually a core fundamental purpose of wine garden, to have a witness for a later grievance hearing that has observed your conduct on that day. And the last difference I would... Now, I understand the differences you're making here, but isn't this something that it would make sense? Why wouldn't this be something that we should just remand for further clarification? The board can depart from its precedents in any way that it wishes to within reason, certainly. But here there is this precedent. In this case, the board makes no reference to it. You're offering on appeal some distinctions, which may be the ones that the board would choose to adopt, but doesn't it make more sense for the board to make those kinds of distinctions initially rather than for us as a court of appeals? If we're going to be deferential to the board and consider what the board says, shouldn't we hear more from the board? Sure. I would disagree that a remand is necessary. And I would state that the main reason is Mahari predates the 25 years of precedent requiring a wine garden representative at a drug test when it's requested. Recall, Mahari wasn't even involved really in a drug test. It was trying to figure out if this person had some psychological issues, and I think a drug test might have been part of that, but really it was a psychological evaluation that they were asking to do. So I think the more on point precedent is Safeway, Systems 99, and Ralph's Groceries, which are 25 years of unbroken history post-dating Mahari that require a wine garden representative before a drug test. And so I think that's the more relevant precedent, so for that reason I don't think that a remand would be necessary in this case to consider Mahari. Thank you. I do... I mean, also, the board doesn't examine System 99 either, does it? I think it references it. I mean, there was some discussion in Ralph's Groceries, and of course the board in this case is relying very heavily on Ralph's Groceries, and so that might have been the reason why it didn't discuss Systems 99 fully, because it really does find Ralph's Groceries to be the controlling precedent here and relies on that. I see my time up. I would love to answer the Court's question about whether or not they could fire him on reasonable suspicion alone, but I also want to be respectful of the Court's time, so if... Go ahead. Okay. I do think it's critical to point out that on this record, Manhattan Beer did not discharge employees for reasonable suspicion of drug use, and I think it's critical if you look at appendix... And that assertion is based on the paperwork that they filled out? The paperwork that they filled out and the testimony of the managing... of the director of operations, and I think it's very telling if you look at appendix 148, the director of operations is asked if they are allowed to discharge an employee without a confirmatory drug test, just on reasonable suspicion alone, and he says no. And he's asked even a hypothetical, and the hypothetical is very telling. What if somebody, quote, came to work clearly intoxicated, stumbling around, slurring, end quote, and then he's asked further, quote, breathing, smelling of alcohol, unable to function any machinery, end quote, would that person still be entitled to a drug test, or could you discharge that person for reasonable suspicion of drug use alone? And the answer is that person would be entitled to a drug test because, quote, we would not prejudge or come to a conclusion. The standard is the individual has a right to be tested, period, and we would not have our managers in a position to prejudge or come to a conclusion. But if we look at the CBA itself, it says any employee who is impaired by illegal drugs is subject to immediate disciplinary action, including termination. Correct, Your Honor. And it discusses testing in the context of reasonable suspicion, but it does lay out a general and clear rule that you're subject to immediate termination. Yes, Your Honor, but of course, in labor relations, it's very important to look at the contract as interpreted by the parties. In fact, it can be a violation of the National Labor Relations Act itself for a company to deviate from past practices as the contract has been interpreted by the parties. So I would submit here that it is just not credible for Manhattan Beer to suggest that its managers would discharge somebody for reasonable suspicion alone. And so their further argument that this drug test was just exculpatory and that it was for Mr. Diaz's benefit is simply not true on this record. Yes, I have one more question. Go ahead. Does the board have any discomfiture with a make-whole remedy such as it has ordered here, including back pay and so on, when the record seems uncontested with regard to Mr. Diaz showing up for work reeking of marijuana with bloody, you know, bloodshot eyes and so on? Sure. I mean, I think, you know, I think it is contested from Mr. Diaz's perspective that he had used any illegal drugs that day. So I would start there. But I would also say all the testimony about Mr. Diaz's appearance and his odor come from management witnesses. And the whole purpose of Weingarten is to have a union representative on the other side who can also observe the individual's appearance and testify at a later hearing like this one or a grievance hearing as to whether or not the individual actually appeared that way. Is there a dispute in the record by Mr. Diaz about whether he in fact reeked of marijuana and had bloodshot eyes? I don't even know if he was asked. I mean, his dispute is he was not using illegal drugs that day. I don't know if he was asked. I just don't recall, Your Honor, if he was asked specifically, did you, you know, smell that odor? I mean, of course, he says on that day he didn't, you know, when he's asked by management. But the results of the test that was taken the next day were negative. And the indication was that if he had used within 30 days, that would have shown up, didn't it? That's right, Your Honor. The board doesn't rely on the... No, I understand that. But I mean, you know, Weingarten is about having someone else's eyes on what's going on as opposed to just company eyes, just management eyes. And your point is that had the union representative been there and said, yeah, you know, his speech was slurred, his eyes were glassy. We even agreed to have a picture taken of him. We wouldn't be here. Yeah, absolutely. And I think it also, you know, the union representative's advice to Mr. Diaz might have been you ought to take the drug test because you do, you know, it's just, it's not known what the advice of the union representative would have been given to Mr. Diaz. And that's what's important here. He was robbed of that opportunity. Just to be clear, is it your position that Mr. Diaz did, in fact, ask for representation that he be afforded a representative during the drug test? Well, he says, I won't take the drug test without my union representative. And I would agree. I think the tenor of your question is maybe is it unclear when in the process Mr. Diaz wanted his union representative to be present? I think it's a little unclear, but I think he was entitled to it, certainly when he asked for it, which is when they're ordering him to take the drug test. And he has to make up his mind whether or not he wants to take the drug test. But that's, I mean, that's the, that's the, then you get into the Mahari problem. If you're saying that he was asking for a drug test, that he was asking for a representative during, that he had a representative during the drug test itself, that's, that's, that's different. But you're saying that's unclear. No, I, no, I think he's asking for the representative while he's making up his mind whether or not to take the drug test. And then would he have also asked his union representative to accompany him to the drug test? I'm not sure, Your Honor. But the point is he was robbed of any opportunity to talk to his union representative. The dissent engaged on whether the conversation with Gonzales satisfied his initial request. The dissent said that did satisfy Weingarten, and the board disagreed. It said the physical presence of him was required, at least with regard to when he was requested to be there. I don't know how, why we have to go any further than that, do we? I, I don't think so, Your Honor. I mean, that's, I, I totally agree with Your Honor. I think he, he wants the representative when he requests it. The representative has shown up, and then, and then he said, well, I also want him to go with me to the drug test. That would be another matter. Totally different case, and the board might very well come out differently on that case. I'm not sure. Thank you, Your Honor. Mr. Diaz decided that he would not take a drug test without his union representative present. That's a decision he was privileged to make. Neither Manhattan Beer's policy, nor board law, requires that Manhattan Beer absolutely make available to an employee a drug test. An investigatory interview under Weingarten, assuming this drug test is an investigatory interview, is something that may not proceed because an employee makes an election. If the interview does not continue, the company is privileged to make a decision on information available to it. As this record shows, it did on the only two times that it occurred previously. There was the reasonable suspicion that was established by observation before Mr. Diaz asked for a union representative. There's no question in this record about that being set. We have a deferential standard of review, don't we? Yes. So how can we say that the board was unreasonable? The board isn't faithful to its own law in this instance because the board's own law establishes that Weingarten isn't an immunization. It's a right that an employee may waive. And when Diaz said, I will not go forward with this drug test unless my union representative is present, that was an occasion under Weingarten, MYRC, for Manhattan Beer to say, we will then proceed on the information that's available to us. Right, but the problem is Joint Appendix 313, small, I'll quote you, small in a report, completes a disciplinary report, says he was fired, quote, refused to go to a drug screening under the reasonable suspicion of substance abuse. Why would the refusal be in any way relevant? Why would she just say a terminated reasonable suspicion of substance abuse? I mean, I don't understand. Why would she say it? Or he say it? Mr. Small was the person who observed the reasonable suspicion. And when he and Mr. Weatherill spoke to Mr. Diaz and said, look, if you go and pass this, you can stick your nose up at us. How about the next page then where Small, Weatherill, and Gonzalez completed a termination of employment memorandum, and it states that he was terminated, quote, because he refused to go to a drug screening test, end of quote. You think it's not reasonable for the board to conclude that he was terminated for refusing to take the test? In the context of the reasonable suspicion. Apparently, that's how Small, Weatherill, and Gonzalez saw it. That's what they said. Yes, in the total context, Your Honor. Thank you. Thank you, Your Honor. Thank you both for your arguments.